IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECO MAREESE DANIELS,          )
Reg. No. 13646-002,            )
                               )
        Petitioner,            )
                               )
    v.                         )     CASE NO. 3:24-CV-756-WKW
                               )              [WO]
UNITED STATES OF AMERICA,      )
                               )
        Respondent.            )

## <u>MEMORANDUM OPINION AND ORDER</u>

## I.  INTRODUCTION

Petitioner Reco Mareese Daniels, a federal inmate proceeding *pro se*, filed a

28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence in *United States*

*v. Daniels*, 3:11-cr-008-WKW-CSC-1 (M.D. Ala. filed Jan. 13, 2011).  (Civ. Doc.

# 2.[1])  Respondent United States of America ("the Government") filed a response

(Civ. Doc. # 14), and Petitioner filed a reply (Civ. Doc. # 25).  Upon consideration

of the parties' filings and for the reasons to follow, Petitioner's § 2255 motion (Civ.

Doc. # 2), as amended and supplemented (Civ. Docs. # 3–6, 8), will be denied

without an evidentiary hearing.  *See* Rule 8, *Rules Governing Section 2255*

*Proceedings for the United States District Courts*.

---

[1] References to documents filed in this case are designated "Civ. Doc." and references to documents filed in the underlying criminal case (3:11-cr-008) are designated "Crim. Doc."

## II.  PROCEDURAL HISTORY

### A.   <u>Conviction, Sentence, and Direct Appeal</u>

In April 2012, Petitioner was convicted by a jury for a series of violent crimes that he and his co-defendants committed between July and October 2009.  (Crim. Doc. # 347.)  The jury found Petitioner guilty of all seven counts as charged in the second superseding indictment:

- <u>Count 1</u>:  conspiracy to use and carry firearms in furtherance of crimes of violence (attempted carjacking, carjacking, and Hobbs Act robbery), in violation of 18 U.S.C. §§ 2 and 924(o);

- <u>Count 2</u>:  aiding and abetting an attempted carjacking, in violation of 18 U.S.C. §§ 2 and 2119(1)–(2);

- <u>Count 3</u>:  aiding and abetting the brandishing of a firearm during an attempted carjacking (Count 2), in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii);

- <u>Count 4</u>:  aiding and abetting a carjacking, in violation of 18 U.S.C. §§ 2 and 2119(1)–(2);

- <u>Count 5</u>:  aiding and abetting the brandishing and discharging of a firearm during a carjacking (Count 4), in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii)–(iii), and 924(c)(1)(C)(i);

- <u>Count 6</u>:  aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. §§ 2 and 1951(a); and

- <u>Count 7</u>:  aiding and abetting the brandishing of a firearm during a robbery (Count 6), in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii), and 924(c)(1)(C)(i).

(Crim. Docs. # 65, 347; Civ. Doc. # 14-1.)

Following a sentencing hearing on August 12, 2012, Petitioner was sentenced to a prison term of 87 years (1,044 months), consisting of:

- concurrent terms of 30 years (360 months) on Counts 1, 2, 4, and 6;

- a consecutive term of 7 years (84 months) on Count 3;

- a consecutive term of 25 years (300 months) on Count 5; and

- a consecutive term of 25 years (300 months) on Count 7.

(Crim. Doc. # 410; Civ. Doc. # 14-2.)  Petitioner appealed, arguing (1) that the district court erred in failing to sever the defendants' trials; (2) that the district court erred in allowing a gang expert from California to testify; (3) that the sentence imposed was greater than necessary, in violation of 18 U.S.C. § 3553(a); and (4) that the district court erred in applying a four-level enhancement for abduction.  (Crim. Doc. # 517 at 2 n.1; Civ. Doc. # 14-3 at 2 n.1); *United States v. Wilson*, 634 F. App'x 718, 720 n.1 (11th Cir. 2015) (per curiam).  The Eleventh Circuit rejected Petitioner's claims for relief and affirmed his convictions and sentences "in all respects."  (Crim. Doc. # 517 at 47); *Wilson*, 634 F. App'x at 740.

**B.**    **2018 Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C.
§ 2255**

In 2018, Petitioner filed a 28 U.S.C. § 2255 motion and a memorandum of law, claiming (1) that the sentences imposed for his convictions on Counts 1, 2, 4, and 6 exceeded the authorized statutory maximums; and (2) in light of the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015) and *Sessions v.*

*Dimaya*, 584 U.S. 148 (2018), his 18 U.S.C. § 924(c) convictions on Counts 3, 5, and 7 were invalid because the predicate "crimes of violence" for these convictions are not legally crimes of violence. *See Daniels v. United States*, 3:18-cv-407-WKW-CSC (M.D. Ala. May 21, 2018), Docs. # 1, 4. In August 2021, Petitioner's motion was granted in part, and the sentences imposed on Counts 1, 2, 4, and 6 were vacated. The motion was denied as to Petitioner's claims for relief on Counts 3, 5, and 7. *Id.*, Doc. # 37.

## C.   <u>First Resentencing</u>

On May 24, 2022, a resentencing hearing was held as to Counts 1, 2, 4, and 6. Petitioner was resentenced to 82 years (984 months) in prison, consisting of:

- concurrent terms of 20 years (240 months) on Counts 1 and 6;

- concurrent terms of 25 years (300 months) on Counts 2 and 4;

- a consecutive term of 7 years (84 months) on Count 3;

- a consecutive term of 25 years (300 months) on Count 5; and

- a consecutive term of 25 years (300 months) on Count 7.

(Crim. Doc. # 723.) Petitioner appealed. On December 8, 2022, the Eleventh Circuit granted the parties' joint motion to vacate and remand, vacated the amended judgment, and remanded the case for further consideration in light of the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). (Crim. Doc. # 742.) On remand, the parties jointly moved to dismiss Count 3, the crime-of-

4

violence charge predicated on an *attempted* carjacking, which under *Taylor* is not a crime of violence.  (Crim. Doc. # 744.)  The district court granted the parties' joint motion, dismissed Count 3, and set a *de novo* resentencing hearing on Counts 1, 2, 4, 5, 6, and 7.  (Crim. Doc. # 746.)  The parties also jointly moved the court to apply at resentencing the anti-stacking provisions in § 403(a) of the First Step Act to Petitioner's remaining § 924(c) convictions (*i.e.*, Counts 5 and 7).  (*See* Crim. Doc. # 746 at 6–7.)  This joint motion also was granted.  (Crim. Doc. # 746 at 7, 8.)

**D.    Second Resentencing**

Petitioner's second resentencing hearing was held on May 2, 2023, and he was resentenced to a prison term of 75 years (900 months), consisting of:

- terms of 20 years (240 months) on Counts 1 and 6 and 25 years (300 months) on Counts 2 and 4 to run consecutively to the extent necessary to produce a combined sentence equal to 58 years (696 months);

- a consecutive term of 10 years (120 months) on Count 5; and

- a consecutive term of 7 years (84 months) on Count 7.

(Crim. Doc. # 766; Civ. Docs. # 2-1, 14-4.)  Petitioner appealed his 900-month sentence, arguing (1) that the district court erred in applying a two-level enhancement for obstruction of justice; and (2) that his sentence was substantively unreasonable.  In March 2024, the Eleventh Circuit rejected Petitioner's arguments and affirmed his sentence.  (Crim. Doc. # 787; Civ. Doc. # 14-5.)

**E.**     **The Instant 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence**

In January 2024, before Petitioner's direct appeal had been resolved, he filed the instant 28 U.S.C. § 2255 motion in his criminal case.  (Crim. Doc. # 784.)  In November 2024, this civil action was opened, and Petitioner's § 2255 motion was docketed.  (Civ. Docs. # 1, 2.)  Along with Petitioner's § 2255 motion, four motions to amend and supplement the motion were docketed.  (Civ. Docs. # 3–6.)  After the court granted the first four motions (Civ. Doc. # 7), Petitioner filed a fifth motion to amend and supplement his § 2255 motion (Civ. Doc. # 8).  On January 13, 2025, an Order was issued granting Petitioner's fifth motion to amend and supplement his § 2255 motion and directing service of the motion and all of its amendments on the United States Attorney for the Middle District of Alabama.  (Civ. Doc. # 9.)  The Government filed its response to Petitioner's § 2255 motion, as amended and supplemented, on February 12, 2025.  (Civ. Doc. # 14.)

In his § 2255 motion, as amended and supplemented, Petitioner challenges, among other things, the 900-month sentence imposed at his May 2023 resentencing. Petitioner's specific allegations and arguments are disjointed, confusing, and difficult to discern.  From what can reasonably be pieced together, Petitioner asserts the following claims:

(1)     The sentencing judge erred in using certain facts not proven to the jury to support his sentence (Civ. Doc. # 2 at 7, 11–12);

(2)   An attempted-murder conviction from when he was 16 years old was improperly used to enhance his sentence (Civ. Doc. # 2 at 7–8, 11);

(3)   The evidence presented at trial did not support the verdict (Civ. Doc. # 2 at 12);

(4)   His 900-month sentence was imposed in violation of, among other cases, *United States v. Davis*, 588 U.S. 445 (2019) (Civ. Doc. # 2 at 14–15; Civ. Doc. # 3 at 2; Civ. Doc. # 8 at 2–3);

(5)   His 900-month sentence was imposed in violation of *Erlinger v. United States*, 602 U.S. 821 (2024) (Civ. Doc. # 5); and

(6)   Petitioner's counsel was ineffective on appeal (Civ. Doc. # 8).[2]

In its response to Petitioner's § 2255 motion, the Government concedes that the motion is timely (Civ. Doc. # 14 at 9 n.3) but argues that Petitioner's first four claims are procedurally barred (Civ. Doc. # 14 at 9–10).   The Government also asserts that these claims are meritless.   (*See* Civ. Doc. # 14 at 13–14.)   As to Petitioner's fifth claim, the Government contends that *Erlinger* does not apply to Petitioner's conviction and the 900-month sentence ultimately imposed.   (Civ. Doc.

---

[2] Petitioner also requests that the undersigned recuse himself and that this motion be transferred to another judge based on what appears to be allegations of bias.  (*See* Civ. Doc. # 2 at 6, 19; *see also* Civ. Doc. # 2 at 13 (accusing the undersigned of having a "personal interest" in Petitioner's case and wanting Petitioner "to die in prison").)  However, Petitioner's § 2255 motion is properly before the undersigned for consideration.  *See* Rule 4(a), *Rules Governing Section 2255 Proceedings for the United States District Courts* ("The clerk must promptly forward the motion to the judge who conducted the trial and imposed sentence . . . .").

# 14 at 10.)  Finally, with respect to Petitioner's sixth claim, the Government asserts that Petitioner's appellate counsel was not ineffective.  (Civ. Doc. # 14 at 11–14.)

Petitioner filed a reply.  (Civ. Doc. # 25.)  Petitioner's reply is confusing and, at times, nonsensical.  From what can be discerned, Petitioner continues to argue that he is serving an "unconstitutional illegal sentence."  (Civ. Doc. # 25 at 3.)  The first 9 pages of his reply are spent rehashing old issues, including the grand jury's indictment (Civ. Doc. # 25 at 3) and his grievances with the disposition of his first § 2255 motion, filed in 2018 (Civ. Doc. # 25 at 4).  On the last few lines of page 9, however, Petitioner starts in on current matters, doubling down on his ineffective assistance of counsel claim.  (Civ. Doc. # 25 at 9–13.)  He then challenges his designation as an armed career criminal under the Armed Career Criminal Act (ACCA) (Civ. Doc. # 25 at 13–15), despite the fact that he was not designed an armed career criminal under the ACCA.  To conclude, Petitioner asks for "equal protection and due process" because his sentence is "unconstitutional and excessive and illegal" in the wake of several cases,[3] the First Step Act, the Second Chance Act, and the 18 U.S.C. § 3553(a) factors.  (Civ. Doc. # 25 at 16.)

---

[3] These cases include:  *Johnson v. United States*, 576 U.S. 591 (2015); *Sessions v. Dimaya*, 584 U.S. 148 (2018); *United States v. Davis*, 588 U.S. 445 (2019); *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc); *United States v. Harper*, 2024 WL 1053547 (N.D. Ga. Mar. 11, 2024); and *Erlinger v. United States*, 602 U.S. 821 (2024).  Throughout his filings, Petitioner also references *United States v. Reece*, 849 F. App'x 480 (5th Cir. 2021) numerous times.

### III.  DISCUSSION

This discussion will proceed in four parts.  First, it will recognize Petitioner's first four claims as procedurally barred.  Second, it will address Petitioner's *Erlinger* claim.  Third, it will delve into Petitioner's ineffective assistance of counsel claim, first providing the claim's context then explaining the interplay between Petitioner's ineffective-assistance claim and his first four claims, which, as will be detailed, are meritless.  Fourth, some closing remarks will be made.

A.    <u>**Claims 1–4:  Procedurally Barred**</u>

The first four claims advanced by Petitioner in his § 2255 motion are procedurally barred.  Those claims are (1)  that the sentencing judge erred in using certain facts not proven to the jury to support his sentence; (2) that an attempted-murder conviction from when he was 16 years old was improperly used to enhance his sentence; (3) that the evidence presented at trial did not support the verdict; and (4) that his 900-month sentence was imposed in violation of *United States v. Davis*, 588 U.S. 445 (2019) and related cases.

Ordinarily, where a claim is not advanced in the trial court or on direct appeal, it is considered procedurally barred in a subsequent § 2255 proceeding.  *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Reece v. United States*, 119 F.3d 1462, 1467 n.9 (11th Cir. 1997); *Mills v. United States*, 36 F.3d 1052, 1055–56 (11th Cir. 1994).  To overcome this procedural bar, a petitioner must show cause for

failing to raise the claim on direct appeal and actual prejudice arising from that failure. *See United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Mills*, 36 F.3d at 1055. To establish cause for failing to raise a claim on direct appeal, a petitioner "must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the petitioner's] own conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam). To establish that actual prejudice arose from the failure to raise a claim on direct appeal, a petitioner cannot merely show that the claimed errors created a "*possibility* of prejudice"; rather, he must show that the claimed errors "worked to his *actual* and substantial disadvantage." *Frady*, 456 U.S. at 170.

On direct appeal of his 900-month sentence, Petitioner raised two issues: (1) the district court erred in applying a two-level enhancement for obstruction of justice; and (2) his sentence is substantively unreasonable. (Civ. Doc. # 14-5; Crim. Doc. # 787.) Petitioner appears to try to show cause for his failure to raise his first four claims on direct appeal by claiming that his counsel provided ineffective assistance on appeal. (*See* Civ. Doc. # 8 at 1–2; Civ. Doc. # 25 at 9–13.) However, as will be discussed further in Part III.B.2, his ineffective-assistance claim fails. Furthermore, as will also be discussed in Part III.B.2, even if Petitioner's first four claims were not procedurally barred, these claims are without merit. Accordingly,

Petitioner has not adequately shown cause for his failure to raise his first four (meritless) claims on direct appeal, nor has he shown actual prejudice arising from that failure.

**B.    Claims 5 & 6:  Meritless**

The fifth and sixth claims advanced by Petitioner in his § 2255 motion—that his 900-month sentence was imposed in violation of *Erlinger v. United States*, 602 U.S. 821 (2024), and that his appellate counsel was ineffective—are meritless.  Each of these arguments will be addressed in turn.

**1.    *Erlinger* Claim**

As to his fifth claim, Petitioner seems to argue that, based on the U.S. Supreme Court's decision in *Erlinger*, he was mischaracterized as an armed career criminal and improperly sentenced under the ACCA and for uncharged conduct.  (Civ. Doc. # 5.)  First, the Court's holding in *Erlinger* is narrow.  The *Erlinger* Court held that the petitioner "was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt," and the Court specifically noted that it would "decide no more than that."  602 U.S. at 835.  Second, *Erlinger* does not apply to Petitioner's conviction and sentence because, as the Government correctly states, "he was not eligible for the [ACCA] at sentencing."  (Civ. Doc. # 14 at 10; *see also* Crim. Doc. # 773 (presentence investigation report ("PSR"), as addended).)  Third, even if *Erlinger* were applicable to Petitioner, the case was decided after his

second resentencing in 2023 and does not apply retroactively in § 2255 proceedings. *See id.* at 859 n.3 (Kavanaugh, J., dissenting) ("For any case that is already final, the *Teague* [*v. Lane*, 489 U.S. 288 (1989)] rule will presumably bar the defendant from raising [*Erlinger*]'s new rule in collateral proceedings.").

### 2.    *Ineffective Assistance of Counsel Claim (Appellate Counsel)*

Finally, in his fifth motion to amend and supplement his § 2255 motion, Petitioner asserts that his appellate counsel was ineffective. (Civ. Doc. # 8 at 1–2; *see also* Civ. Doc. # 25 at 9–13 (Petitioner's reply in which he attempts to bolster his ineffective-assistance claim).)

A claim for ineffective assistance of counsel is evaluated under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on his ineffective-assistance claim, Petitioner must show (1) that his "counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688; *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). To meet the prejudice element, Petitioner must prove that there

12

is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Harrington v. Richter*, 562 U.S. 82, 112 (2016) ("The likelihood of a different result must be substantial, not just conceivable.").

Petitioner claims that his appellate counsel was "combative" and refused to follow his wishes and instructions. Petitioner also claims that his appellate counsel failed to argue for the application of caselaw researched by Petitioner—namely, *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc) and *United States v. Harper*, 2024 WL 1053547 (N.D. Ga. Mar. 11, 2024)—and to assert certain claims and issues on appeal that he contends were "reserved for appellate review." (Civ. Doc. # 8 at 1–2; Civ. Doc. # 25 at 10.) Petitioner's appellate counsel, Richard F. Matthews, Jr., filed a responsive affidavit, stating that he disagrees with Petitioner's contention that he was "combative" simply because he did not agree with issues that Petitioner requested be submitted on appeal after researching those issues and the caselaw Petitioner had sent to him, as well as having multiple conversations with Petitioner and Petitioner's counsel during his 2023 resentencing, Everett Urech. (Civ. Doc. # 13 at 2–3.) Mr. Matthews also made clear that Petitioner "did not like the fact that his appeal was limited to certain issues that could be raised." (Civ. Doc. # 13 at 3.)

13

Presumably, the issues Petitioner wanted his counsel to raise on direct appeal of his 2023 resentencing are the first four claims he presents in his amended and supplemented § 2255 motion. However, the Government contends—and this court agrees—that Petitioner's procedurally barred claims (claims 1–4), *see supra* Part III.A, are also meritless. Appellate counsel is not required to raise meritless issues on appeal and thus cannot be found ineffective under *Strickland* for failing or declining to do so. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) ("[A]ppellate counsel was not ineffective for failing to raise a nonmeritorious issue."); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."). In fact, appellate counsel is not even required to raise every potentially meritorious claim on appeal. *See Jones v. Barnes*, 463 U.S. 645, 754 (1983) ("'Nothing in the Constitution or [the U.S. Supreme Court's] interpretation of [it] requires' an appellate attorney 'to raise every "colorable" claim suggested by a client.'"); *accord Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013).

Petitioner's ineffective-assistance claim fails at the first *Strickland* element because he has not shown that his appellate counsel's performance was deficient—*i.e.*, "that no competent counsel would have taken the action that his counsel did

14

take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).  Based upon a thorough review of the extensive record in this case, Petitioner's appellate counsel winnowed out weak and meritless arguments and presented the claims that had the strongest chance of success on appeal.  *See Smith v. Murray*, 477 U.S. 527, 536 (1986) ("[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (citation and internal quotation marks omitted)); *accord Johnson v. Alabama*, 256 F.3d 1156, 1188 (11th Cir. 2001).  As mentioned *supra* Part III.B and as will be discussed below, the claims Petitioner presents in his amended and supplemented § 2255 motion are meritless, and Petitioner's counsel was not required to raise these issues on appeal.

Concerning Petitioner's first claim—that the sentencing judge erred in using certain facts not proven to the jury to support his sentence (Civ. Doc. # 2 at 7, 11–12)—this claim is without merit because "a district court may find facts not found by a jury nor admitted by the defendant, and use them in formulating a sentence, as long as the district court properly applies *advisory* Guidelines."  *United States v. Murphy*, 182 F. App'x 894, 897 (11th Cir. 2006) (per curiam) (citing *United States v. Chau*, 426 F.3d 1318, 1324 (11th Cir. 2005)); *see also United States v. O'Brien*, 560 U.S. 218, 224 (2010) ("Sentencing factors . . . can be proved to a judge at sentencing by a preponderance of the evidence.").  Moreover, in its opinion

affirming Petitioner's 900-month sentence, the Eleventh Circuit expressly stated, "The court was also permitted to consider the seriousness of the offense conduct and obstruction of justice conduct, including the conduct that went beyond the charged or convicted conduct, as detailed in the presentence investigation report, at trial, and at the sentencing hearings." (Crim. Doc. # 787 at 9.)

Petitioner's second claim—that an attempted-murder conviction from when he was 16 years old was improperly used to enhance his sentence (Civ. Doc. # 2 at 7–8, 11)—likewise is meritless. When Petitioner was 16, he was tried as an adult and convicted of attempted murder. That is, he "was convicted in an *adult* court" and he "received and served [an] *adult* sentence[] . . . . To say that such conviction[] should not be considered for purposes of determining criminal history ignores the plain language of [U.S.S.G.] § 4A1.2(d)(1) and Application Note 7." *United States v. Pinion*, 4 F.3d 941, 945 (11th Cir. 1993).

Petitioner's third claim—that the evidence presented at trial did not support the verdict (Civ. Doc. # 2 at 12)—lacks merit for at least two reasons. First, Petitioner was convicted on April 6, 2012. (Crim. Doc. # 347.) After he was sentenced, Petitioner unsuccessfully appealed his conviction and sentence. (*See* Crim. Doc. # 517 (Eleventh Circuit per curiam opinion affirming Petitioner's conviction and sentence).) Petitioner cannot now, well over a decade later, use a § 2255 motion to challenge the weight or sufficiency of the evidence supporting the

16

jury's guilty verdict. *See Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). Second, Petitioner already filed a § 2255 motion in 2018, challenging his original conviction and sentence. To the extent Petitioner's § 2255 motion filed in 2024 represents, at minimum, a second collateral challenge to his underlying conviction and is not a challenge to the new judgment issued as a result of his 2023 resentencing, this motion is considered successive. *See* 28 U.S.C. § 2255(h); *cf. In re Green*, 215 F.3d 1195, 1196 (11th Cir. 2000) ("Because [the petitioner] attacks the constitutionality of his re-sentencing proceeding only, and not the validity of his conviction, we hold this § 2255 motion is not 'second or successive.'").

Finally, Petitioner's fourth claim—that his 900-month sentence was imposed in violation of, among other cases, *United States v. Davis*, 588 U.S. 445 (2019) (Civ. Doc. # 2 at 14–15; Civ. Doc. # 8 at 2–3)—holds no water. Petitioner seems to try to resurrect the (unsuccessful) argument from his 2018 § 2255 motion that the Supreme Court's holdings in *Johnson v. United States*, 576 U.S. 591 (2015), *Sessions v. Dimaya*, 584 U.S. 148 (2018),[4] and *United States v. Davis*, 588 U.S. 445 (2019) invalidate his 18 U.S.C. § 924(c) sentences on Counts 5 and 7. In *Johnson*, the U.S.

---

[4] In *Dimaya*, the U.S. Supreme Court applied the reasoning from *Johnson* to hold that the residual clause of 18 U.S.C. § 16(b) is unconstitutionally vague. *See* 584 U.S. at 152–54.

Supreme Court held that the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague and that increasing a defendant's sentence under this clause violates due process.  576 U.S. at 597.  In *Davis*, the Supreme Court extended its ruling in *Johnson*, holding that the residual clause in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague.  588 U.S. at 470.

Section 924(c)(3) is made up of two distinct clauses:  the "use-of-force" or "elements" clause, § 924(c)(3)(A); and the "residual clause," § 924(c)(3)(B). Petitioner contends that *Davis*'s invalidation of § 924(c)(3)(B)'s residual clause makes his conviction and sentences for his § 924(c) offenses (*i.e.*, Counts 5 and 7) improper.  However, "[a] federal prisoner raising a *Davis* claim cannot show that he was sentenced under § 924(c)'s residual clause if current binding precedent clearly establishes his predicate offense qualifies as a crime of violence under the elements clause."  *Levatte v. United States*, 805 F. App'x 658, 659 (11th Cir. 2020) (per curiam).

As a threshold matter, it is immaterial that Petitioner was charged with, convicted of, and sentenced for the predicate offenses of *aiding and abetting* a carjacking (*i.e.*, Count 4) and *aiding and abetting* Hobbs Act robbery (*i.e.*, Count 6).[5]  *See id.* ("[A]iding and abetting a crime of violence qualifies as a crime of

---

[5] To this point, Petitioner argues that the Eleventh Circuit's holding in *United States v. Dupree* applies to his conviction and sentences.  In *Dupree*, an en banc panel of the Eleventh Circuit held "that the definition of 'controlled substance offense' in [U.S.S.G.] § 4B1.2(b) does not include

violence for purposes of § 924(c)(3)(A)." (citing *Steiner v. United States*, 940 F.3d 1282, 1293 (11th Cir. 2019))).  According to binding Eleventh Circuit precedent, carjacking in violation of 18 U.S.C. § 2119(1)–(2) is categorically a crime of violence under § 924(c)(3)(A)'s elements clause.  *See Steiner*, 940 F.3d at 1283. Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) also is categorically a crime of violence under § 924(c)(3)(A)'s elements clause.  *See In re Colon*, 826 F.3d 1301, 1305–06 (11th Cir. 2016).  Binding precedent in this Circuit is dispositive as to Petitioner's fourth claim challenging his conviction and sentence under *Davis* and related cases because this precedent "clearly establishes that the predicate offense[s] qualif[y] as . . . crime[s] of violence under the elements clause."  *Levatte*, 805 F. App'x at 659 (citing *In re Pollard*, 931 F.3d 1318, 1321 (11th Cir. 2019)).  Petitioner has not shown, and there is nothing in the record to indicate, that he was sentenced under § 924(c)(3)(B)'s residual clause, and this claim, too, is without merit.[6]

---

inchoate offenses."  57 F.4th 1269, 1271 (11th Cir. 2023) (en banc).  Based on that holding, the Court vacated Dupree's sentence and remanded to the district court for resentencing. *Id.  Dupree* is inapplicable to Petitioner because he was not sentenced as a career offender pursuant to U.S.S.G. § 4B1.1.  (*See* Crim. Doc. # 773 (PSR, as addended).)

[6] Petitioner points to *In re Hammoud*, 931 F.3d 1032 (11th Cir. 2019) (en banc), insisting that *Davis* is retroactive and thus applies to his original conviction.  (*See, e.g.*, Civ. Doc. # 3 at 2; Civ. Doc. # 3-1 at 4.)  Although Petitioner is correct that *Hammoud* held that *Davis* is "retroactively applicable to criminal cases that became final before [it] was announced," 931 F.3d at 1039, the fact that *Davis* applies retroactively does not help Petitioner.  Petitioner's *Davis* claim fails because he was sentenced under the use-of-force/elements clause, not the residual clause invalidated by *Davis*.

In sum, Petitioner's ineffective-assistance claim fails at the first *Strickland* element.    Petitioner is unable to demonstrate that his appellate counsel's performance was deficient simply because counsel failed or refused to raise the aforementioned meritless issues on direct appeal.  Petitioner's appeal not yielding his desired result (which seems to be a reduction of his sentence to time served) is insufficient in and of itself to show that Petitioner's appellate counsel was ineffective.  Therefore, Petitioner is not entitled to relief based on his ineffective assistance of counsel claim.

## C.    <u>Petitioner's Pending Motions</u>

### 1.    *Motion for the Grand Jury Minutes, the ACCA Evidence, and the ACCA Indictment*

In his reply, Petitioner incorporates a motion for the grand jury minutes, the ACCA evidence, and the ACCA indictment.  (Civ. Doc. # 25 at 13.)  Petitioner seems to misunderstand that he was *not* charged, convicted, or sentenced under the ACCA.    Accordingly, his embedded motion for grand jury minutes, ACCA evidence, and the ACCA indictment (Civ. Doc. # 25 at 13) will be denied.

### 2.    *Motion for Expansion of the Record Amending Movant's Reply to the Government's Response*

Petitioner also has filed a motion for expansion of the record, asking to amend his reply to the Government's response.  (Civ. Doc. # 26.)  Petitioner attached to this motion emails between him and his sentencing attorney, Everett Urech, from

September and October 2022.  (*See* Civ. Doc. # 26-1.)  He attempts to use these emails to substantiate his claim that his appellate counsel provided ineffective assistance.  However, these emails pre-date Petitioner's 2023 resentencing and concern the motion for a certificate of appealability filed by Mr. Urech after Petitioner's 2022 resentencing.  (*See* Civ. Doc. # 26-1 at  3–4, 7.)  That appeal culminated in remand to the district court for Petitioner's 2023 resentencing in light of *United States v. Taylor*, 596 U.S. 845 (2022).  It appears that Petitioner is trying to use these emails as evidence that his appellate counsel "lied" when he said that Mr. Urech suggested he pursue a First Step Act Claim on appeal.  Whether Mr. Urech did or did not suggest a First Step Act argument on appeal is immaterial as it already has been determined that Petitioner's ineffective-assistance claim fails.

This motion thus will be granted to the extent that the arguments and attached exhibits have been reviewed and considered.

### 3.    *Motion to Supplement and Amend*

Finally, Petitioner has filed yet another motion to supplement and amend his § 2255 motion.  (Civ. Doc. # 32.)  In this motion, he appears to ask the court to apply the Supreme Court's decision in *Hewitt v. United States*, 606 U.S. 419 (2025) to his § 924(c) sentences because he is a "first time [18 U.S.C.] § 924(c) offender."  (Civ. Doc. # 32 (alteration in original).)  *Hewitt* contemplated whether § 924(c) offenders, who were being resentenced following the enactment of the First Step Act in 2018,

were subject to the Act's benefits, specifically the anti-stacking provisions of § 403. *See* 606 U.S. at 426. *Hewitt* applies in the specific context of a § 924(c) offender who "*had* been sentenced as of the Act's enactment" but then "that sentence was subsequently vacated, such that the offender must face a post-Act resentencing." *Id.* at 422–23.

Presumably, Petitioner is trying to reassert one of the main arguments presented in one of the many motions he filed prior to his resentencing in 2022— that the First Step Act should apply retroactively to his remaining § 924(c) convictions and sentences (*i.e.*, Counts 5 and 7). After Count 3 was dismissed following the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022), Petitioner was granted a *de novo* (*i.e.*, plenary) resentencing on Counts 1, 2, 4, 5, 6, and 7. (Crim. Doc. # 746.) And, in fact, § 403 of the First Step Act was applied in fashioning Petitioner's new sentences for Counts 5 and 7.[7] (Crim. Doc.

---

[7] The application of First Step Act benefits to Petitioner at his 2023 resentencing aligns with *Hewitt*, which stated:

> First Step Act benefits apply to all first-time § 924(c) offenders sentenced after the Act's enactment date (whether it is an initial or resentencing). This means that § 403(b)'s retroactivity line falls between those past offenders with final sentences that are still in effect, on the one hand, and those who still need to be sentenced for their § 924(c) offenses on the other. The former are stuck with their old sentences, for finality reasons, while the latter are eligible for First Step Act benefits at resentencing . . . .

606 U.S. at 438. To note, under *Hewitt*, § 403(a) of the First Step Act would not have applied to Petitioner's convictions and sentences at his 2022 resentencing because that resentencing occurred prior to the dismissal of Count 3 and Petitioner's *de novo* resentencing. Petitioner's *de novo* resentencing on Counts 1, 2, 4, 5, 6, and 7 is what triggered the applicability of the First Step Act.

# 773 at 41–47 (Third Addendum to the PSR).)  A comparison of the 2022 and 2023 resentencing judgments reflects the reduction of Petitioner's § 924(c) sentences on Counts 5 and 7 from 50 combined years to 17 combined years.  (*Compare* Crim. Doc. # 723 (2022 resentencing judgment, sentencing Petitioner to 25 years on Count 5 and 25 years on Count 7, to run consecutively to all other counts) *with* Crim. Doc. # 766 (2023 resentencing judgment, sentencing Petitioner to 10 years on Count 5 and 7 years on Count 7, to run consecutively to all other counts).)  Petitioner already has reaped the benefits of the First Step Act as it applies to his § 924(c) sentences at his 2023 resentencing.

Petitioner's motion (Civ. Doc. # 32) will thus be granted but only to the extent the arguments presented have been considered.

## D.    Closing Remarks

Petitioner argues that the court is not "in sync with current law" and does not properly interpret or apply *Johnson* and *Dimaya*.  (*See* Civ. Doc. # 6 at 2; Civ. Doc. # 25 at 5.)  However, the court is well aware of the current state of the law but does not accept Petitioner's skewed interpretation of those decisions.  In keeping with changes in the law, Petitioner was sentenced, resentenced, then resentenced again. His total current sentence of 900 months is 144 months (12 years) shorter than his initial sentence of 1,044 months.

Although the legal landscape may have changed, what has not changed, and what will never change, are the facts of the case. Between July and October 2009, Petitioner and his co-defendants went on a violent crime spree. To preface, Petitioner and his co-defendants were all members of or associated with the Cedar Block Piru faction of the Bloods street gang. (*See* Crim. Doc. # 773 ¶ 14.) At Petitioner's 2023 resentencing, the court noted that uncontradicted evidence tended to prove that not only was Petitioner a Bloods gang leader, but he was also, in fact, the original gangster ("OG") of the Bloods gang's Montgomery branch. (Civ. Doc. # 14-6 at 29; Crim. Doc. # 777 at 29.)

On July 30, 2009, Petitioner, Courtney Wilson, and Damien Pierce, attempted to carjack a 2008 Dodge Charger. That night, Petitioner, Wilson, and Pierce were riding in a Dodge Caravan belonging to Petitioner. Two other individuals—Anthony Tallie and Valerie Long—also were present. Wilson instructed Petitioner to follow the driver of the Charger and to park his van near the vehicle. Wilson and Tallie exited the van and assaulted the driver with firearms, one of which was provided to Tallie by Petitioner. Wilson and Tallie stole the driver's keys and cell phone then attempted to steal the Charger, but they could not get it to start. The driver sustained serious injuries as a result of this incident. (Crim. Doc. # 773 ¶¶ 15–17, 31.)

On August 1, 2009, Petitioner, Wilson, and Pierce forced their way into a Pike Road residence occupied by a woman ("J.T."), her husband ("D.B."), their three-

24

month-old son, D.B.'s brother ("D.A."), and D.A.'s girlfriend ("R.H."). Petitioner, Wilson, and Pierce ordered D.B., who answered the door, to the ground at gunpoint. Petitioner kicked him in the stomach, hit him in the head with a pistol, took the cash from his pockets, and threatened to kill him. Petitioner and Wilson repeatedly asked D.B. "where's the safe?," and D.B. told them repeatedly that he did not have a safe. (Crim. Doc. # 773 ¶¶ 18–19.)

Petitioner then moved to J.T. He grabbed her by the hair, pointed his gun at her, and forced her to the ground. He asked her, "b****, where is the safe?" She said that they did not have a safe. Wilson told Petitioner to "shoot that b****!" J.T. pleaded for her life. Petitioner instructed her not to move or say anything, or he would shoot her in the head. J.T. heard two gunshots during the incident but did not see who fired the shots. Her cell phone, car keys, and vehicle were taken. (Crim. Doc. # 773 ¶¶ 18–19.)

R.H., who was holding J.T. and D.B.'s three-month-old baby during the incident, had a gun held to her head by Petitioner. He told her that he would shoot her if she did anything. She heard two gunshots, and she heard Petitioner yell "I'm going to kill this dude on Piru," and "I put this on Piru." Her purse and car keys were stolen. (Crim. Doc. # 773 ¶ 21.) D.A. was forced to the ground at gunpoint, his cash, cell phone, and car keys were stolen. (Crim. Doc. # 773 ¶ 22.)

25

Case 3:24-cv-00756-WKW-SMD    Document 33    Filed 05/19/26    Page 26 of 30

Petitioner and his accomplices ransacked the house, absconding with cocaine, thousands of dollars in cash, firearms, and electronics. They then took D.B. and forced him into the trunk of J.T.'s car. Fortunately, D.B. was able to use the trunk release to escape before Petitioner, Wilson, and Pierce left the neighborhood. D.B. suffered serious injuries, including skull and knee fractures, as a result of this attack. (Crim. Doc. # 773 ¶¶ 19, 24, 29.)

On October 23, 2009, Wilson and Willie Tallie (Anthony Tallie's brother) robbed a Kwik Shop convenience store clerk at gunpoint. Wilson and Tallie stole the money from the cash register and then demanded more money from the safe, threatening to kill the clerk. Unable to open the safe, Wilson stole the clerk's purse and credit cards. They fled the scene in a white truck that had been stolen earlier that day. After Wilson and Tallie abandoned the stolen truck, Petitioner picked them up. Petitioner also supplied Tallie with the gun he used during the commission of the robbery. (Crim. Doc. # 773 ¶¶ 25–27.)

But there's more: After Petitioner and his co-defendants were arrested and awaiting arraignment, Petitioner threatened Anthony Tallie and told him not to cooperate with law enforcement. (Crim. Doc. # 773 ¶ 44.) Additionally, at Petitioner's 2012 sentencing, the court found that Petitioner sent a letter containing instructions on how to intimidate Valerie Long and her family to lower-ranking Bloods gang members. The letter included death threats, gave the gang members

26

directions to the family's house, and identified Long's family members by name. (Crim. Doc. # 773 at 35.)   Furthermore, it was learned during Petitioner's 2023 resentencing that a pregnant prosecutor had received threats before the trial.  (Civ. Doc. # 14-6 at 29; Crim. Doc. # 777 at 29.)

The facts of this case paint a picture of gang violence, chaos, and destruction. Nevertheless, Petitioner is unrepentant.  As just one example of his unrepentance, in his motion, amendments and supplements, and his reply, Petitioner hammers down on a "great" case that should have been presented by his attorney on direct appeal. (*See, e.g.*, Civ. Doc. # 25 at 10.)  That "great" case is *United States v. Harper*, an unreported case from the United States District Court for the Northern District of Georgia that is not binding on this court.  *See* 2024 WL 1053547 (N.D. Ga. Mar. 11, 2024).  It is easy to see why Petitioner wants to hold this case out as favorable to him.  In *Harper*, the defendant was convicted of three bank robberies, brandishing a weapon during each of those robberies under § 924(c), and as a felon in possession of a firearm.  *Id*. at *1.  The *Harper* defendant was sentenced to 1,044 months in prison, the same as Petitioner's original 2012 sentence.  *Id*.  The district court granted the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and reduced the defendant's sentence to time served.  *Id*.

But there are some stark differences between the *Harper* defendant and Petitioner worth noting.  As stated by the district court in *Harper*:

27

> [The defendant] makes this an easy case.  First, [the defendant] does not shy away from taking responsibility for the severity of his crimes.  In his statement during the hearing before undersigned, he expressed remorse and noted that he has reflected on his unfortunate decisions every day of the twenty years he has spent in prison, recognizing the threat he posed during his robberies.  Without discounting the seriousness of [the defendant] committing armed robberies, it is worth noting that no one was injured and no shots were fired.

*Id.* at \*7.  Petitioner makes this an "easy case" too, insofar as Petitioner shares none of the *Harper* defendant's characteristics.  Petitioner has not taken any responsibility for his crimes nor has he expressed a shred of remorse, instead opting to place blame on anyone and everyone but himself.  For example, at his 2023 resentencing, Petitioner said,

> A lot of things are credited to me and my brother.  And we've been put in this position whereas we're bearing the cross for others who also made a lot of poor choices and decisions.  I guess at the end of the day, they wasn't [sic] man enough to own up to what they did and used me for a scapegoat.

(Civ. Doc. # 14-6 at 19; Crim. Doc. # 777 at 19.)  Petitioner also said, "I'm not who y'all painted me out to be," and he complained about the relationship he has never been able to have with his daughter and about the amount of time he has spent in prison.  (Civ. Doc. # 14-6 at 19–20; Crim. Doc. # 777 at 19–20.)  But perhaps the biggest difference between Petitioner and the *Harper* defendant is that no one was injured and no shots were fired during the *Harper* defendant's crimes.  Petitioner and his accomplices, on the other hand, left multiple brutalized and traumatized victims in their wake.

The Government put it best in its response:

> At the end of the day, [Petitioner]'s primary complaint is that he received a lengthy sentence. But that is not the fault of his trial attorney, or his appellate attorney, or the judge. It is the fault of [Petitioner] and a consequence of the violent crimes for which he was convicted.

(Civ. Doc. # 14 at 14.) Petitioner is serving a lengthy sentence; that much is true. But that lengthy sentence is a consequence of Petitioner's own actions—actions for which he was found guilty beyond a reasonable doubt by a jury of his peers over 14 years ago. Since his conviction and initial sentencing, Petitioner has received the benefit of not one but two sentence reductions based on current law and retroactively applicable changes in the law. There is no further relief to offer him.

## IV.  CONCLUSION

Despite Petitioner's expansive and scattershot presentation in his § 2255 motion, including multiple amendments and supplements, he has failed to articulate any cognizable basis for relief. Consequently, Petitioner's motion will be denied without an evidentiary hearing. *See* Rule 8, *Rules Governing Section 2255 Proceedings for the United States District Courts*; *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 763 (11th Cir. 2010) ("Having alleged no specific facts that, if true, would entitle him to federal habeas relief, [Petitioner] is not entitled to an evidentiary hearing."). Furthermore, to the extent Petitioner seeks a certificate of appealability, the request to proceed on appeal will be denied because Petitioner has not made a

substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–85 (2000).

Based on the foregoing, it is ORDERED that

(1)     Petitioner's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence (Civ. Doc. # 2), as amended and supplemented (Civ. Docs. # 3–6, 8), is DENIED;

(2)     To the extent Petitioner seeks a certificate of appealability, any request to proceed on appeal is DENIED;

(3)     Petitioner's motion for the grand jury minutes, the ACCA evidence, and the ACCA indictment (Civ. Doc. # 25 at 13) is DENIED;

(4)     Petitioner's motion for expansion of the record amending movant's reply to the Government (Civ. Doc. # 26) is GRANTED to the extent the arguments and attached exhibits have been reviewed and considered; and

(5)     Petitioner's motion to supplement and amend his § 2255 motion (Civ. Doc. # 32) is GRANTED to the extent that the arguments presented have been considered.

Final judgment will be entered separately.

DONE this 19th day of May, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

30